FILED

FEB 25 2026

CLERK U.S. DISTRICT COURT
NORTHERN DISTRICT OF OHIO CLEVELAND

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF OHIO**

**EASTERN DIVISION**

| | |
|---|---|
| **JULIE ROBERT,** | ) |
| Plaintiff, | ) **CASE NO. 1:26-cv-00103** |
| | ) |
| | ) **JUDGE CHARLES E. FLEMING** |
| v. | ) |
| | ) |
| **DEBRA BROWN, PHILIP MCCALL,** | ) |
| | ) |
| **CUBESMART,** | ) |
| | ) |
| Defendants, | ) |

**DEFENDANTS DEBRA BROWN AND PHILIP MCCALL'S**

**ENHANCED MOTION FOR SANCTIONS**

TO THE HONORABLE COURT:

Defendants Debra Brown and Philip McCall respectfully submit this Enhanced Motion for

Sanctions pursuant to Federal Rule of Civil Procedure 11, requesting that this Court impose

appropriate sanctions against Plaintiff Julie Robert for her systematic pattern of bad faith

litigation conduct, evidence unsupported by the record, and abuse of the federal judicial system.

**I. INTRODUCTION**

This case represents a troubling example of how the federal court system can be weaponized

through evidence unsupported by the record, coordinated false testimony, and vexatious

litigation tactics.  Plaintiff has engaged in a calculated campaign of deception that includes manufacturing evidence, coordinating false witness statements, and pursuing frivolous litigation across multiple jurisdictions to harass Defendants.

The evidence presented herein demonstrates that Plaintiff has violated her fundamental duty of candor to this Court and has used federal litigation as a tool of harassment rather than legitimate dispute resolution. Such conduct warrants the imposition of sanctions to deter future abuse of the judicial process.  All factual assertions in this motion are supported by Exhibits 1–22, organized by category in the accompanying Table of Contents for the Court's convenience

## II. FACTUAL BACKGROUND

### A. The Storage Unit Transfer

The transfer of Unit 218 did not occur at Plaintiff's request, nor because Defendants sought the unit or its contents. The mover who placed Plaintiff's property into the unit after the eviction had already paid the next month's rent and refused to release the unit unless an additional $200 was paid. For more than ninety minutes, all five individuals present—Defendants Brown and McCall, Plaintiff's agents Tim Smith and Jon Liptak, and mover Dave Thompson—argued about how to proceed, with Mr. Thompson repeatedly threatening to trash the contents based on the bailiff's instructions. During this time, Mr. Liptak was on the phone with Plaintiff, who stated in writing that Defendant Brown "did not have to pay the $200" because CubeSmart had a promotion if paid online, directly contradicting her later claim that she did not approve the transfer.[1]

[1]Plaintiff's own text message on December 13, 2025, at 2:01 PM states: "Debra, they have promotion for first month free, you do not have to pay Dave $200," confirming her knowledge

of the transfer and contradicting her later assertion that she did not approve it. (See Exhibit 1 page 43).

To prevent the destruction of Plaintiff's property and allow the move to continue, Defendant Brown paid $200. This action was taken solely to protect Plaintiff's belongings, not to obtain the unit or its contents. Plaintiff later promised to reimburse the transfer cost via Zelle and represented that the arrangement would be financially beneficial for both parties. Plaintiff made only one payment and then repeatedly changed her own terms, demanded additional work, and failed to provide the promised reimbursement. Defendants therefore assumed the unit not out of desire for the contents, but to prevent further charges, avoid destruction of the property, and in reliance on Plaintiff's assurances. demanded additional work, and failed to provide the promised reimbursement. Defendants therefore assumed the unit not out of desire for the contents, but to prevent further charges, avoid destruction of the property, and in reliance on Plaintiff's assurances.

## B. Plaintiff's Pattern of Vexatious Litigation

Plaintiff has been designated as a vexatious litigant by the State of Ohio Supreme Court. Despite this designation, she has engaged in forum shopping, filing substantially similar claims across multiple jurisdictions:

**District of New Hampshire Case No. 1:25-CV-00481-LM**: This case remains active, and Plaintiff has recently amended her original complaint to add Philip McCall and myself as additional defendants, demonstrating her continued expansion of this harassment campaign across multiple federal jurisdictions while this Ohio case is pending.

District of Ohio Case No. 1:26-CV-00103 (this case)

- District of Ohio Case No. 1:25-cv-02036 (dismissed by Judge Fleming)

- Cleveland Municipal Court Case Nos. 2025-CVG-009765, 2025-CVG-002846, 2025-CVG-005572

Court of Common Pleas Cuyahoga County Case No. CV-24-991073

This pattern demonstrates a clear strategy of using multiple courts simultaneously to harass Defendants and circumvent adverse rulings, with the New Hampshire amendment showing that Plaintiff continues to escalate her litigation campaign even while pursuing relief in this Court. This pattern is documented in Exhibits 13–22, which show Plaintiff repeatedly filing substantially similar claims across multiple courts despite prior dismissals.

## III. PLAINTIFF'S SYSTEMATIC EVIDENCE UNSUPPORTED BY THE RECORD

### A. Coordinated False Testimony

Plaintiff has coordinated a campaign of inconsistent evidence false testimony through her agents Jon Liptak and Tim Smith. The evidence reveals:

1. **Identical False Narratives**: Both agents present virtually identical accounts despite claiming independent knowledge

2. Plaintiff's affidavit (Exhibit D) contains multiple statements in paragraphs 5–15 that are factually inaccurate, unsupported by documentation, and in several instances based on hearsay. These assertions are contradicted by contemporaneous text messages, the CubeSmart transfer documents, and Plaintiff's own communications. For example, the affidavit claims Defendants 'seized' the unit and prevented retrieval of property, yet Exhibits 1–3 show Defendants repeatedly attempted to coordinate the return of items and

that Plaintiff's escalating threats and interruptions prevented completion of the process. Assertions regarding alleged computer access, alleged 'half-million-dollar' valuations, and alleged misconduct by unrelated third parties are unsupported and irrelevant. Plaintiff's affidavit therefore does not constitute reliable evidence and cannot overcome the objective documentation in the record

2. **Impossible Timeline Claims**: Allegations of events that contradict documented evidence

3. **Coordinated Valuations**: Suspiciously similar inflated valuations designed to manufacture federal jurisdiction

As shown in Exhibits 1–3, Plaintiff's statements are contradicted by her own contemporaneous communications, which include direct instructions to Defendants regarding the property.

**B. Evidence Unsupported by the Record of Damages**

Plaintiff's damage claims are demonstrably false:

1. **Antiques in Climate Control**: The valuable antiques Plaintiff claims were "destroyed" are actually in her agent's possession in climate-controlled storage units, paid for by Plaintiff herself

2. **Inflated Valuations**: Property valuations have been grossly inflated to meet federal diversity jurisdiction requirements

3. **Contradictory Claims**: Plaintiff simultaneously claims items were "destroyed" while demanding their return

Exhibits 10–12 demonstrate that Plaintiff's claimed damages exceed documented values by more than 2,000%, indicating intentional inflation to meet the $75,000 diversity threshold

Plaintiff's Exhibit D relies heavily on photographs taken in September 2025 at a different location, months before the events at issue. These images lack metadata, lack chain of custody, and do not establish that any of the items depicted were present in Unit 218 on December 13, 2025. Identifying similarities between furniture in older photographs and items later stored at CubeSmart does not constitute evidence of location, ownership, or possession on the relevant date. Plaintiff's comparison charts and narrative descriptions are speculative and unsupported by documentation. By contrast, the CubeSmart Assignment and Assumption Agreement (Exhibit 7), billing records (Exhibit 9), and contemporaneous communications (Exhibits 1–3) provide objective evidence of lawful tenancy and contradict Plaintiff's assertions. Plaintiff's September photographs therefore have no probative value regarding the contents of Unit 218 on December 13, 2025

Plaintiff's comparison charts and narrative descriptions rely on speculation rather than documentation. Identifying similarities between furniture in older photographs and items later stored at CubeSmart does not establish that Defendants ever possessed, withheld, or damaged those items

## C. December 14, 2025 Communications: Coordinated Legal Strategy

Defendants respectfully bring to the Court's attention communications from December 14, 2025, at 8:38 PM, in which Plaintiff provided scripts to Defendants for court proceedings. These

communications reveal her coordination of legal strategy designed to create federal diversity jurisdiction through manufactured claims.

**Legal Significance:**

This evidence suggests:

- **Pre-planned strategy**: Plaintiff planned the federal jurisdiction approach in advance

- **Coordinated testimony**: She attempted to influence witness statements

- **Questionable intent**: The federal case was designed to circumvent previous state court limitations

### D. Unsupported by the Record Damage Claims in Recent Communications

In communications dated February 2026, Plaintiff admits Defendants "took the unit with our stuff" but falsely claims she directed them not to do so. This directly contradicts her December 13th text messages where she explicitly directed Defendants to move everything. **See Exhibit 2 (Group Text Messages, Feb. 9-10, 2026)**.

Additionally, Plaintiff repeatedly calls Defendants "druggies" or "drug addicts" without any actual witness testimony, sworn declarations, or evidence of any kind - pure fabrication designed to defame and harass.

These contradictions are not minor discrepancies but direct conflicts between Plaintiff's allegations and the documented evidence in Exhibits 1–12.

### E. Photographic Evidence Not Supported by Documentation

On December 14, 2025, as Defendants took pictures of items being loaded for climate control, Plaintiff sent pictures back with circled areas claiming there were holes or damage. However, Defendants were standing in front of the items and observed no such damage. Even after Defendants assured her the furniture looked excellent, she continued to diminish the condition, blaming the mover for the exact same things she now blames Defendants for.

The photographs and videos in Exhibits 4–6 further confirm that the items were intact and in good condition at the time Defendants handled them.

## IV. ABUSE OF FEDERAL JURISDICTION

### A. Manufactured Diversity Claims

Plaintiff has systematically inflated damage claims to meet the $75,000 federal diversity threshold, despite knowing:

1. The actual value of items left in the storage unit was minimal (less than $3,000)

2. The valuable antiques remain in her agent's possession

3. No actual damages approaching the jurisdictional threshold exist

The valuation evidence in Exhibits 10–12 confirms that Plaintiff's claimed damages are unsupported by any objective documentation.

### B. Forum Shopping and Duplicative Litigation

Plaintiff's filing of substantially similar claims across multiple jurisdictions demonstrates a clear pattern of forum shopping and abuse of the judicial system.

## V. HARASSMENT CAMPAIGN AGAINST DEFENDANTS

## A. Threats and Intimidation

Plaintiff has engaged in a systematic harassment campaign including:

1. **Threats of Criminal Prosecution**: Repeatedly threatening Defendants with federal charges and U.S. Marshal intervention

2. **Public Defamation**: Spreading false allegations to public officials, including Mayor Burke and local council members

3. **Personal Attacks**: Calling Defendants "druggies," "mentally ill," and other defamatory terms Exhibits 1–3 show that Plaintiff's threats and accusations escalated precisely when Defendants attempted to coordinate the return of her propertywithout any factual basis

## B. Coordination with Public Officials

Text message evidence reveals Plaintiff's attempts to manipulate public officials, including Mayor Burke, to pressure Defendants. When Mayor Burke initially assisted Defendants, Plaintiff later turned him against them through her false narratives.

## VI. EVIDENCE OF BAD FAITH LITIGATION

### A. Previous Federal Court Dismissal

Judge Fleming previously dismissed Plaintiff's related case (1:25-cv-02036) for lack of subject matter jurisdiction, finding her TRO motion without merit. Despite this clear judicial guidance, Plaintiff filed this substantially similar action.

This Court has already dismissed substantially similar claims filed by Plaintiff for lack of jurisdiction, as reflected in Exhibit 15

**B. Coordinated Legal Strategy**

Evidence shows Plaintiff provided scripts to Defendants for court proceedings, revealing her coordination of legal strategy designed to create federal jurisdiction through manufactured claims.

## VII. PLAINTIFF'S ATTEMPT TO RE-LITIGATE DISMISSED CLAIMS

### A. Chinatown LLC Litigation Strategy

Examination of Plaintiff's complaint reveals an apparent attempt to re-litigate her dismissed case against Chinatown LLC. Approximately 85% of her current allegations appear to be unsupported by the record and are attempts to resurrect claims that were properly dismissed by state courts.

### B. Misuse of Federal Court

Plaintiff appears to view federal court as a vehicle to circumvent state court limitations and re-litigate previously unsuccessful claims.

Exhibits 14–22 collectively demonstrate Plaintiff's ongoing effort to re-package previously dismissed claims into new filings across multiple jurisdictions.

## VIII. DEFENDANTS' GOOD FAITH EFFORTS TO RETURN PROPERTY AND PLAINTIFF'S PREVENTION THEREOF

### A. Defendants Never Wanted Plaintiff's Property

The evidence clearly demonstrates that Defendants never desired to retain Plaintiff's property. The storage unit transfer occurred solely because Plaintiff failed to remove her items before the payment deadline, forcing Defendants to either pay for another month or clear the unit. Defendants chose to clear the unit to avoid ongoing financial obligation for property they never wanted.

## B. Philip McCall's Administrative Limitations

A critical fact that undermines Plaintiff's narrative is that Philip McCall could not transfer or handle any aspects of the storage unit because it was in Defendant Debra Brown's name. This administrative reality meant that any coordination regarding the property had to go through Ms. Brown directly, contradicting Plaintiff's claims about Mr. McCall's involvement in property retention.

## C. Plaintiff's Creation of False "Coordination" Group Text

On February 9, 2026, Plaintiff created a group text message thread ostensibly for coordinating the return of her property. However, the evidence reveals this was a pretext for launching a sustained harassment campaign against Defendants. **See Exhibit 2 (Group Text Messages, Feb. 9-10, 2026)**.

The group text, which included Plaintiff's agents Jon Liptak and Tim Smith, immediately devolved into:

- Personal attacks and name-calling directed at Ms. Brown

- Threats of criminal prosecution and federal charges

- Accusations of theft and deception

- Demands that Ms. Brown comply with Plaintiff's "terms" for property return

Exhibits 1–3 show that Plaintiff used the group text not to coordinate logistics but to launch accusations, threats, and interruptions that prevented completion of the return

### D. Harassment Campaign That Prevented Complete Property Return

The evidence shows that Plaintiff's harassment actually prevented the complete return of her property. As documented in the text messages:

**Ms. Brown's Explanation (Feb. 10, 2026, 4:52 PM):**

> "If you bothered to read the message I told you everything was not there because of your incessant texting which I had to stop when I'm doing to respond took a great deal of time... What was supposed to be a group text for information turn out to be your stage to harass me and talk shit"

**Ms. Brown's Clear Statement of Intent (Feb. 9, 2026, 10:12 PM):**

> "And this wasn't upon your request this was upon me offering it back to you because I don't want it I never wanted it The only reason I had it was because I needed to clear the storage unit because I was not paying for another month"

These communications demonstrate that Defendants' attempts to return the property were repeatedly disrupted by Plaintiff's conduct, not by any refusal or delay on Defendants' part.

### E. Evidence of Harassment Preventing Property Return

The text messages show that every time Ms. Brown attempted to coordinate the return, Plaintiff and her agents would launch into attacks:

- **Threats of Federal Prosecution:** "If you are not in Ohio, US Marshal will get the info from you or charge you deception n theft"
- **Personal Attacks:** Calling Ms. Brown a "pathological liar" and claiming she has "mental illness"
- **Impossible Demands:** Requiring law enforcement presence while simultaneously threatening criminal charges
- **Constant Interruptions:** Ms. Brown explicitly stated "everytime you text I stop loading"

**F. Defendants' Plan for Proper Legal Resolution**

Recognizing that Plaintiff's harassment makes direct coordination impossible, Defendants plan to file an interpleader action with the Court to deposit the remaining items, allowing the Court to determine proper disposition. This demonstrates Defendants' continued good faith and respect for legal process, in stark contrast to Plaintiff's abuse of the system.

Defendants have acted consistently in good faith, including offering to return all property and preparing to file an interpleader action to ensure proper judicial resolution

Defendants have acted consistently in good faith, including offering to return all property and preparing to file an interpleader action to ensure proper judicial resolution

**G. Legal Significance**

This evidence demonstrates:

1. **Defendants' Good Faith:** Consistent efforts to return unwanted property

2. **Plaintiff's Bad Faith:** Using "coordination" as pretext for harassment

3. **Plaintiff's Prevention of Resolution:** Her own conduct prevented complete property return

4. **Defendants' Respect for Legal Process:** Willingness to use proper judicial channels (interpleader) for resolution

The irony is unmistakable: Plaintiff claims Defendants "stole" property that Defendants have been actively trying to return, while Plaintiff's own harassment campaign prevented that return from being completed.

## IX. LEGAL STANDARD FOR RULE 11 SANCTIONS

Federal Rule of Civil Procedure 11 requires that papers filed with the court be well-grounded in fact and warranted by existing law. Rule 11(b) provides that by presenting a pleading to the court, an attorney or party certifies that:

1. The claims are warranted by existing law or a good faith argument for modification of existing law;

2. The factual contentions have evidentiary support; and

3. The pleading is not being presented for any improper purpose such as harassment.

Fed. R. Civ. P. 11(b); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

### A. Standard for Imposing Sanctions

Courts may impose sanctions when a filing violates Rule 11(b). *Business Guides, Inc. v. Chromatic Communications Enters., Inc.*, 498 U.S. 533, 548 (1991). The standard is objective reasonableness under the circumstances. *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 126 (1989).

## B. Frivolous Litigation and Harassment

Rule 11 sanctions are particularly appropriate when litigation is used as a tool of harassment rather than legitimate dispute resolution. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986). Courts have broad discretion in fashioning appropriate sanctions. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991).

## X. PLAINTIFF'S CONDUCT WARRANTS RULE 11 SANCTIONS

### A. Factual Contentions Lack Evidentiary Support

Plaintiff's claims fail the evidentiary support requirement of Rule 11(b)(3):

1. **False Damage Claims**: Plaintiff claims valuable antiques were destroyed when they remain in her agent's climate-controlled storage

2. **Inflated Valuations**: Property values have been grossly exaggerated to manufacture federal jurisdiction

3. **Contradictory Allegations**: Plaintiff simultaneously claims property was destroyed and demands its return

The contradictions between Plaintiff's allegations and the contemporaneous documents in Exhibits 1–22 demonstrate that her factual contentions lack evidentiary support as required by Rule 11(b)(3)

### B. Improper Purpose - Harassment

Plaintiff's conduct demonstrates the litigation was filed for harassment purposes prohibited by Rule 11(b)(1):

1. **Vexatious Litigation Pattern**: Multiple substantially similar cases across jurisdictions

2. **Coordinated False Testimony**: Coordinating identical false witness statements

3. **Public Defamation Campaign**: Using litigation to spread false allegations to public officials

**C. Not Warranted by Existing Law**

Plaintiff's jurisdictional claims are not warranted by existing law given:

1. **Actual Damages Below Threshold**: True property value is less than $3,000, far below the $75,000 diversity requirement

2. **Previous Dismissal**: Judge Fleming already dismissed substantially similar claims for lack of jurisdiction

3. **Manufactured Claims**: Artificial inflation of damages solely to create federal jurisdiction


## XI. APPROPRIATE SANCTIONS

Given the egregious nature of Plaintiff's conduct, this Court should impose sanctions including:

### A. Monetary Sanctions

Under Rule 11(c)(4), monetary sanctions should be imposed to deter future frivolous litigation. *Cooter & Gell*, 496 U.S. at 393. The sanctions should be sufficient to deter repetition of such conduct. *Oliveri v. Thompson*, 803 F.2d 1265, 1282 (2d Cir. 1986).


### B. Striking of Evidence Unsupported by the Record

The Court should strike all evidence unsupported by the record, including inflated valuations and false witness statements. Fed. R. Civ. P. 12(f).

## C. Attorney Fees and Costs

Defendants should be awarded reasonable attorney fees and costs incurred in defending against this frivolous action. *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978).

## D. Referral for Investigation

The Court should consider referring this matter to appropriate authorities for investigation of potential perjury and evidence which is unsupported by the record. *Precision Specialty, Inc. v. Resilient Floor Covering Inst.*, 94 F.3d 1351, 1357 (9th Cir. 1996).

## XII. CONCLUSION

Defendants respectfully submit that Plaintiff's conduct throughout this litigation demonstrates a clear pattern of bad faith that warrants sanctions under Federal Rule of Civil Procedure 11. Her systematic fabrication of evidence, coordination of false testimony, abuse of the legal process through vexatious litigation, attempts to manufacture federal jurisdiction through inflated valuations, and harassment campaign that prevented property resolution represent precisely the type of conduct that Rule 11 is designed to deter.

The evidence presented herein demonstrates that Plaintiff has violated her duty of candor to the Court and has used the federal judicial system as a tool of harassment rather than a forum for legitimate dispute resolution. Such conduct not only wastes judicial resources but undermines the integrity of the legal process itself.

WHEREFORE, Defendants respectfully request that this Honorable Court:

1. **GRANT** this Motion for Sanctions;

2. **IMPOSE** appropriate monetary sanctions against Plaintiff sufficient to deter future frivolous litigation;

3. **STRIKE** Plaintiff's unsupported by the record evidence;

4. **AWARD** Defendants their reasonable attorney fees and costs incurred in defending against this frivolous action;

5. **REFER** this matter to appropriate authorities for investigation of potential perjury and evidence unsupported by the record;

6. **GRANT** such other relief as this Court deems just and proper.


Respectfully submitted,


/s/ Debra Brown

Debra Brown, Pro Se

10705 Grace Avenue, Garfield Heights, OH 44125

216-253-0863

DEBRABATTLES@MSN.COM


/s/ Philip McCall

Philip McCall, Pro Se

10705 Grace Avenue, Garfield Heights, OH 44125

216-253-1574

notjustanotherhedgehog@gmail.com


**\*\*EXHIBIT LIST\*\***

Exhibit 1: Text message transcript between plaintiff and myself (December 9, 2025 - January 31, 2026) - all metadata attached

Exhibit 2: Text message transcript between plaintiff, Jon Liptak, and Tim Smith and myself (February 7-2026 - February 22, 2026) - all metadata attached

Exhibit 3: Text message transcript between Mayor Matthew Burke and myself (December 9, 2025 - January 30, 2026) - all metadata attached

Exhibit 4: Photos & Video of the contents of the storage Unit 218

Exhibit 5: Photos and Video of the Antiques in her agent's possession in climate control unit

Exhibit 6: Photos of additional unit 119 I documented

Exhibit 7: CubeSmart transfer of Unit documentation

Exhibit 8: CubeSmart Rental Agreement

Exhibit 9: CubeSmart Billing records

Exhibit 10: Hand-written receipt found in Unit218 for 11 of the antiques

Exhibit 11: Valuation of items left in Unit 218

Exhibit 12: Valuation of the antiques moved to climate control units

Exhibit 13: Vexatious Litigant Order

Exhibit 14: Case 1:25-CV-2036 filed on 9/25/2025 by plaintiff

Exhibit 15: Memorandum Opinion and Order from Judge Fleming denying the TRO Motion and dismissing 1:25-CV-2036 for lack of subject matter

Exhibit 16: Case 1:25-CV-00446 filed in NH – dismissed

Exhibit 17: Current active case in District of New Hampshire 1:25-cv-00481-LM

Exhibit 18: Current active case filed at Municipal of Cleveland 1:25-cvg-009765

Exhibit 19: Case 1:25-CVG-002846 Case filed in relation to 1:25-CV-2036

Exhibit 20: Case 1:25-CVG-005574 Active case scheduled for pretrial 2/26/2026 in relation to 1:25-CVG-2036

Exhibit 21: Case 1:25-cv-9765 active case scheduled trial 3/16/2026 related to 1:25-CV-2036

Exhibit 22: Magistrates decision on case 1:25CVG-002846 Plaintiff had Philip and I file motion and provided script for this court case